# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| LARAE D. SKIRVIN, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:13-cv-1692-WTL-DKL |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
|    Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Larae D. Skirvin requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying Ms. Skirvin's application for Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, now rules as follows.

## I.    PROCEDURAL HISTORY

On March 3, 2010, an application for SSI was filed on behalf of Ms. Skirvin, who was then a child under the age of eighteen. The claim was denied initially on June 29, 2010, and again upon reconsideration on January 21, 2011. Following the denial upon reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on June 7, 2012.[1] ALJ T. Whitaker issued her decision denying Ms. Skirvin's claim on August 28, 2012,[2] and the Appeals

---

[1] A hearing was originally scheduled for March 19, 2012; however, no testimony was given at this hearing because Ms. Skirvin did not have a valid identification card. *See* R. at 98-104.

[2] Ms. Skirvin attained the age of eighteen on May 30, 2010, before the ALJ issued her denial decision. R. at 16.

Council denied her request for review on September 6, 2013. After the Appeals Council denied review of the ALJ's decision, Ms. Skirvin filed this timely appeal.

## II. APPLICABLE STANDARD

To be eligible for SSI, a claimant must meet the requirements of 42 U.S.C. § 423. Pursuant to that statute, "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The standard is a stringent one. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *See Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).

In determining whether a claimant under the age of eighteen is disabled, the Commissioner employs a three-step sequential analysis. 20 C.F.R. § 416.924(a). At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition. 20 C.F.R. § 416.924(b). At step two, if the claimant does not have a "severe" impairment or a combination of impairments that is "severe," she is not disabled. 20 C.F.R. § 416.924(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals any impairment that appears in the Listing of Impairments, codified at 20 C.F.R. pt. 404, subpt. P, App. 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals the listings, and meets the twelve-month duration requirement, the claimant is deemed disabled. 20 C.F.R. § 416.906.

In determining whether an impairment functionally equals the listings, the ALJ must examine the following domains: (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). The claimant's impairment or combination of impairments must result in "marked" limitations in two or more domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation is one that seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that very seriously interferes with the claimant's ability to sustain and complete activities. 20 C.F.R. § 416.924a(e)(3)(i).

In determining whether a claimant over the age of eighteen is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920 (a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920 (a)(4)(v).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v.*

*Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Rather, the ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while "she is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

### III. THE ALJ'S DECISION

At step one, the ALJ found that Ms. Skirvin had not engaged in substantial gainful activity since March 3, 2010, the application date. At step two, the ALJ concluded that Ms. Skirvin had the following severe impairments: blindness in the left eye with anisometropia and amblyopia; a history of non-epileptic seizures (pseudo-seizures); incontinentia pigmenti; leg length discrepancy; oppositional/defiant disorder; obsessive compulsive disorder; depression; bipolar disorder; learning disability in mathematics and reading; attention deficit hyperactivity disorder; mood disorder not otherwise specified; hip dysplasia and chronic hip pain and greater trochanteric bursitis; left foot deformity/internal foot progression angle; communications disorder/speech language delays; spells; asthma and history of bronchiectasis; short stature; history of chronic abdominal pain and constipation; and borderline intellectual functioning. At step three, the ALJ determined that Ms. Skirvin did not have an impairment or combination of

4

impairments that met, medically equaled, or functionally equaled a listed impairment. Accordingly, the ALJ concluded that Ms. Skirvin was not disabled prior to attaining age eighteen.

The ALJ then considered whether Ms. Skirvin had been disabled since she attained the age of eighteen. The ALJ noted that Ms. Skirvin had not developed any new impairments since attaining the age of eighteen, but that she continued to have severe impairments. R. at 34. At step four, the ALJ determined that Ms. Skirvin had the residual functional capacity ("RFC") to perform light work with certain other physical and mental restrictions. The ALJ noted that Ms. Skirvin had no past relevant work; however, at step five the ALJ determined that Ms. Skirvin could perform a range of work that exists in the national economy, including work as a bus person. Accordingly, the ALJ concluded that Ms. Skirvin was not disabled as defined by the Act since attaining the age of eighteen.

## IV.     EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Ms. Skirvin's brief (Dkt. No. 19) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## V.     DISCUSSION

In her brief in support of her Complaint, Ms. Skirvin argues that the ALJ: 1) erred in determining that she was not disabled due to her various mental impairments; 2) erred in her credibility assessment; and 3) erred in assessing an RFC that did not fully account for her mental impairments. Her arguments are addressed, in turn, below.

## A. The ALJ's Consideration of Ms. Skirvin's Mental Impairments

Ms. Skirvin argues that she "met her burden of proof by offering to the ALJ substantial psychological and special education examination and treatment evidence proving that her combined mental impairments rendered her totally disabled." Pl.'s Br. at 13. The Court disagrees.

Ms. Skirvin first argues that the ALJ erred in "reject[ing] all of the examining and treatment evidence and relied only on the non-examining and non-treating evidence of her medical advisor psychologist. This was reversible error because the ALJ was required to give controlling weight to the evidence from the claimant's examining and treating psychologists and psychotherapists." Pl.'s Br. at 13. Ms. Skirvin is correct that generally, treating physicians' opinions are entitled to controlling weight:

> A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record. If this opinion is well supported and there is no contradictory evidence, there is no basis on which the administrative judge, who is not a physician, could refuse to accept it. But once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider.

*Bates v. Colvin*, 736 F.3d 1093, 1099-100 (7th Cir. 2013) (internal quotation marks and citations omitted). Unfortunately, Ms. Skirvin does not specifically identify which treating physicians or opinions were entitled to controlling weight; nevertheless, the Court finds that the ALJ did consider a number of different physicians' opinions and adequately explained why she assigned certain weight to them. For example, the ALJ gave "great weight to the opinion of examining psychologist Amy Larabee's opinion." R. at 36. She also gave "great weight to the opinion of Pam Turner's MACC-SLP." *Id*. The ALJ further considered Ms. Skirvin's therapists' opinions

from Dunn Mental Health Center, incorporating many of their findings into his RFC assessment. In so doing, the ALJ did not err.

Ms. Skirvin also argues that "[t]he ALJ disregarded [her] consistent GAF assessments of 50 and below which indicated that she could not keep a job and thus was totally disabled." Pl.'s Br. at 13. With regard to her GAF scores, the ALJ noted the following:

> [T]he undersigned notes that the claimant's representative argues that the Global Assessment of Functioning ratings offered by the claimant's therapists, ranging from 46 to 50 indicate that the claimant is "unable to work." While these GAF ratings do indicate that the clinician assessed the claimant's functioning to be impaired at specific points in time, such ratings do not provide a detailed analysis of her ability to perform basic work-related activities. Consequently, the GAFs alone cannot be a basis for finding the claimant disabled.

R. at 36. Indeed, this Court has previously noted that GAF scores, standing alone, do not automatically warrant a finding of disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on [her] GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)). Accordingly, the ALJ did not err in not finding Ms. Skirvin disabled based on her GAF scores alone.

Finally, Ms. Skirvin argues that the ALJ erred in finding that she did not have a marked impairment in interacting and relating with others and "erroneously overruled the state agency medical advisors' determination[.]" Pl.'s Reply at 5. The Court disagrees. Ms. Skirvin's SSI claim was reconsidered in January 2011; on reconsideration, Joseph Gaddy, M.D., B. Randal Horton, Psy. D, and M. Thomas, CCC-SLP, opined that Ms. Skirvin had a "Marked" limitation in "Interacting and Relating with Others." R. at 540. They noted that Ms. Skirvin's speech was "80% intelligible to familiar listener when context is known and 70% with unknown context. For an unfamiliar listener, clmt. is 70% in known context, 60% out of context, improving with

7

repetition. *Speech imposes a marked limitation.*" *Id*. at 540 (emphasis added). The specific findings referenced in the reconsideration determination were from a May 2010, Speech-Language evaluation. During that evaluation, Pam Turner, MA CCC-SLP, noted that Ms. Skirvin's "upper and lower teeth did not appear to meet at midline, and spaces due to missing teeth were observed. Larae reported that four of her teeth were pulled because her jaw bones were deteriorating and her gums were bleeding." *Id*. at 433. Thus, the ALJ noted the following in finding that Ms. Skirvin had a "less than marked limitation in interacting and relating with others":

> At the time of the reconsideration determination, the State agency medical advisors opined that the claimant had a marked difficulty in this domain. This was based, at least in part, on results of a Speech/Language consultative examination that indicated limited intelligibility of speech. However, the claimant apparently had had dental work performed shorty before that exam. The claimant's mental health therapist indicated that the claimant's speech was within normal limits. The undersigned had no difficulty understanding the claimant's speech at the hearing. The undersigned gives no weight to the medical opinions in the record that the claimant, as a child, functionally equals a listing because of marked difficulties in the domains of interacting and relating with others and acquiring and using information because, as noted above, the evidence fails to establish that the claimant has marked limitations in the domain of interacting and relating with others.
>
> . . .
>
> The record does indicate that the claimant has a history of temper outbursts and few, if any, positive peer relationships. She has demonstrated poor judgment. Nevertheless, the records from the claimant's therapist show that she is capable of being cooperative and friendly when she is motivated to do so.

*Id*. at 31 (internal citations omitted).

The Court does not see any error in the ALJ's finding that Ms. Skirvin did not have a marked impairment in this domain. The Court concurs that the marked notation in the record clearly focuses on Ms. Skirvin's speech. However, in addition to speech, this domain "considers how well a child is able to initiate and sustain emotional connections with others, develop and

8

use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." *Id*. at 30. Indeed, the medical expert noted that while "[t]here was a marked rating in the file [], that was based mostly on language, that language would interfere with her relating, not behavioral [or] emotional." *Id*. at 71. With regard to the other criteria, the medical expert noted the following:

> So going to the exhibits, I think these are from childhood, 11F her speech was rated within normal limits. She had four or five friends. In 9F she had support of family and friends. In 2F she had average language scores. In 5E she's described as being on the phone all day, having younger friends, and that she could speak clearly. In 1E she was rated as getting along with adult siblings and teachers.

*Id*. In all, the Court concurs with the Commissioner that "the record substantially supports the ALJ's considerations related to Plaintiff's ability to interact and relate with others." Def.'s Br. at 12.

### B. The ALJ's Credibility Determination

Ms. Skirvin next argues that '[t]he ALJ's credibility determination is patently erroneous." Pl.'s Br. at 18. The Court disagrees. First, Ms. Skirvin generally argues that the credibility determination is "contrary to the evidence, because the ALJ ignored or misinterpreted the objective evidence cited above which proved the claimant was totally disabled due to her combined mental impairments with consistent GAF assessments in the totally disabled range which fully corroborated her allegations of total disability." *Id*. The Court disagrees and has addressed these arguments above.

Ms. Skirvin's only other argument regarding her credibility determination is that the ALJ erred in using the following "boilerplate" language:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity,

9

persistence and limiting effects of these symptoms are not credible to the extent
they are inconsistent with the residual functional capacity assessment.

R. at 29. Indeed, the Seventh Circuit has "repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014) (citing *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)). However, "the use of such boilerplate language will not automatically discredit the ALJ's ultimate conclusion if the ALJ otherwise identifies information that justifies the credibility determination." *Id.* In this case, the ALJ went well beyond the "boilerplate language," addressing all of the following: Ms. Skirvin's daily activities; the location, duration, frequency, and intensity of her symptoms; factors that precipitated and aggravated her symptoms; the treatment she received; the opinion evidence of State Agency doctors and Ms. Skirvin's treating physicians; and Ms. Skirvin's and her mother's reports. *See* R. at 35-38. In all, the Court is satisfied with the ALJ's credibility determination in this case.

## C. The ALJ's Step Five Determination

Finally, Ms. Skirvin argues that the ALJ's RFC assessment fails to account for her mental impairments, specifically, her moderate impairments in activities of daily living, social functioning, and concentration, persistence, and pace.[3] She argues that the ALJ impermissibly

---

[3] Ms. Skirvin notes that the ALJ found that she had moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace, citing to pages 25 and 26 of the Record. These pages contain the ALJ's Step Three determination. It is true that the ALJ found that Ms. Skirvin had moderate difficulties in evaluating whether she met the requirements of paragraph B at Step Three; this, however, is not an RFC assessment. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental

failed to account for these deficiencies in limiting her to "simple, routine, repetitive, concrete and physical tasks." Pl.'s Br. at 22. The Court disagrees. Ms. Skirvin's RFC—with regard to her mental limitations—is, in pertinent part, as follows:

> She is limited to one or two-step tasks, involving simple, routine, repetitive, concrete and physical tasks. She must be allowed to be off task five percent of a workday in addition to regularly scheduled breaks. She is limited to work with no production rate and no pace work. She is limited to a work environment that is free of fast-paced production requirements. She is limited to work that involves only simple, work-related decisions. She is limited to work with few, if any, workplace changes. She is limited to work with no interaction with the public. She is limited to work with only occasional interaction with co-workers with no tandem tasks. She is limited to work with only occasional interaction with supervisors.

R. at 35. This RFC assessment and the hypothetical given to the Vocational Expert ("VE") at the hearing fully account for Ms. Skirvin's mental limitations.

On June 28, 2010, Ms. Skirvin underwent a mental RFC assessment performed by Kenneth Neville, Ph.D. Ms. Skirvin was noted to be "Markedly Limited" in her "ability to understand and remember detailed instructions." *Id*. at 472. With regard to her sustained concentration and persistence, she was noted to be "Moderately Limited" in her "ability to maintain attention and concentration for extended periods" and her "ability to make simple work-related decisions." *Id*. at 472-73. With regard to her social interaction, she was noted to be "Moderately Limited" in her "ability to interact appropriately with the general public" and her "ability to accept instructions and respond appropriately to criticism from supervisors." *Id*. at 473. Finally, she was noted to be "Moderately Limited" in her "ability to set realistic goals or make plans independently of others." *Id*. Based on these notations, Dr. Neville offered the following opinion:

---

impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the ALJ noted this in her decision. *See* R. at 26-27.

> Clmt has some mild emotional [ability] but retains capacity for work type interaction[.] Attention and concentration are moderately limited. She would need occasional redirection to complete tasks. Clmt is able to tolerate normal work related change. . . . The claimant would struggle with complex skilled or semi skilled tasks but would be able to carry out simple unskilled tasks in competitive setting.

*Id*. at 474.

At the August 28, 2012, hearing, the ALJ asked Dr. Steiner, a licensed clinical psychologist, if Ms. Skirvin's "mental impairments either alone or in combination with each other result in functional limitations for this young woman in the work environment[.]" *Id*. at 76. The medical expert responded yes, noting that "she could do only simple, unskilled work in a competitive setting, and [it] should be hands-on, active work, not just sitting and reading, or passive kinds of work . . . with little socializing with either the public or coworkers." *Id*. The "hands-on work" requirement was recommended to "help engage [Ms. Skirvin's] attention." *Id*. The medical expert further opined that Ms. Skirvin would be limited to "superficial" interactions with others and should be limited to "simple instructions" with "one or two-step tasks." *Id*. at 77. Thus, the ALJ's hypothetical given to the VE at that hearing included the following limitations:

> The person would need work limited to simple, routine, repetitive, concrete physical tasks, and the work . . . also has to be one or two-step tasks. The person would need work where they're allowed to be off-task five percent of the day in addition to regularly scheduled breaks. The person would need work that's in a work environment where there's no production rate or pace work. The person would also need . . . a work environment free of fast-paced production requirement[s]. The work would have to involve only simple work-related decisions with few, if any, workplace changes. There could be no interaction with the public. There could be only occasional interaction with coworkers with no tandem tasks. And there could only be occasional interaction with supervisors. . . . The person could have no work that involved negotiation, and also no interaction with the supervisors or the coworkers that would involve negotiation.

*Id*. at 91-92. The VE then identified jobs that Ms. Skirvin could perform.

In this case, the hypothetical given to the VE and the ALJ's RFC assessment fully and accurately encompass Ms. Skirvin's limitations in daily activities, social functioning, and concentration, persistence, and pace. They are not analogous to the "unskilled work" limitation that the Seventh Circuit has cautioned does not fully address certain mental limitations. *See, e.g.*, *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (noting that limiting the plaintiff to "unskilled work" did not fully address her difficulties in "maintain[ing] regular work attendance, [carrying] out instructions, and [dealing] with the stresses of full-time employment"). Here, the ALJ went well beyond limiting Ms. Skirvin to "simple, routine, repetitive, concrete physical tasks" and imposed other restrictions, fully compatible with her mental RFC assessment and the medical expert's opinion. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). In all, the Court finds no reversible error with the ALJ's RFC assessment or the hypothetical given to the VE.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 2/26/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification